636 So.2d 668 (1994)
Don SORRELLS and Bettie Sorrells
v.
R & R CUSTOM COACH WORKS, Inc., d/b/a Suncrest Motor Homes.
R & R Custom Coach Works, Inc., d/b/a Suncrest Motor Homes
v.
LA MESA RV CENTER, INC.
No. 91-CA-00538.
Supreme Court of Mississippi.
April 28, 1994.
J.B. Van Slyke, Jr., Hattiesburg, Barbara Bond Parker, Purvis, for appellant.
Michael V. Ratliff, Ingram Matthews & Stroud, Hattiesburg, for appellee.
Before DAN M. LEE, P.J., and BANKS and JAMES L. ROBERTS, Jr., JJ.
*669 DAN M. LEE, Presiding Justice, for the Court:
This case was appealed from the Lamar County Circuit Court. That court dismissed the complaint of Don Sorrells and Bettie Sorrells against R & R Custom Coach Works, Inc., as well as the third-party complaint of R & R Custom Coach Works, Inc., filed against La Mesa RV Center, Inc., on complex jurisdictional grounds. We affirm, finding that the lower court correctly concluded that an exercise of in personam jurisdiction which comported with the Due Process Clause of the Fourteenth Amendment could not be properly maintained.
By our decision today, we reiterate certain limitations placed upon our long-arm statute, Miss. Code Ann. § 13-3-57 (1972), by the Due Process Clause. We also write to emphasize the requirement that a nonresident defendant do more than merely place its product in the "stream of commerce" before its actions will be deemed "purposefully directed" at Mississippi for purposes of Due Process analysis.

I.
Don Sorrells' occupation required him to travel throughout the United States. His business travel included extensive durations of stay in Texas, California, Nevada, Washington, D.C., Arkansas, Alabama, Florida, and Mississippi. Although Don and Bettie Sorrells ("Sorrells") purchased a condominium in Texas, they preserved their home in Mississippi, regarding it as their permanent address.
While on a trip to Las Vegas, Nevada, the Sorrells purchased a motor home from La Mesa RV Center, Inc. ("La Mesa"), a Nevada corporation.[1] The motor home had been manufactured by R & R Custom Coach Works, Inc. ("R & R"), a California corporation.
Subsequently, after returning to Mississippi, the Sorrells filed a complaint in the Forrest County Circuit Court naming Suncrest Motor Homes, Inc. ("Suncrest"), R & R, and La Mesa as defendants.[2] The complaint asserted that the Sorrells were Mississippi residents, and it sought damages in the amount of $9,720.00, alleging that La Mesa had sold the Sorrells a defective motor home in Las Vegas, Nevada, which had been manufactured by R & R.[3] In brief, the Sorrells alleged that the motor home was a "lemon" because it had numerous defects. As the basis for their complaint, the Sorrells alleged that La Mesa and/or R & R were culpable because their actions constituted either negligent manufacture and/or breach of express and/or implied warranties.
The two defendants, R & R and La Mesa, initially entered special appearances for the purpose of objecting to personal jurisdiction. It was uncontroverted that neither company was authorized to do business in Mississippi, had never done any business in Mississippi, and had never had any contact with the State of Mississippi.
The defendants filed a motion to dismiss for lack of personal jurisdiction, or on grounds of forum non conveniens, which was overruled by the Forrest County Circuit Court. Nevertheless, on September 8, 1988, upon joint motion of the Sorrells and La Mesa, the Sorrells' complaint against La Mesa was dismissed with prejudice. Apparently, that motion was made to effectuate the release of La Mesa as a defendant in the lawsuit in compliance with the terms of a release which the Sorrells executed in favor of La Mesa during the pendency of the litigation.
Shortly after La Mesa was dismissed from the case, on January 11, 1989, R & R filed another motion. That motion requested that the order dismissing La Mesa from the lawsuit be set aside so that R & R could state a *670 cross-claim against La Mesa, or in the alternative, that R & R be allowed to bring in La Mesa as a third-party defendant. Simultaneous to the filing of that motion, R & R answered the Sorrells' complaint, asserting affirmative defenses therein, including the lack of personal jurisdiction.
Thereafter, on June 14, 1989, the circuit court granted R & R's motion to bring La Mesa back into the lawsuit as a third-party defendant. R & R promptly filed its third-party complaint against La Mesa, claiming that La Mesa should indemnify R & R against any damages which might be recovered from R & R by the Sorrells. R & R claimed that this right of indemnification arose out of an implied contract or course of conduct between R & R and La Mesa.
Discovery was conducted, and R & R eventually learned that the residence of the Sorrells was located in Lamar County, Mississippi, although the Sorrells had filed their complaint in Forrest County, Mississippi. Based upon the Sorrells' residence, venue was changed to the Lamar County Circuit Court on November 8, 1989.
Unwavering in its contention that personal jurisdiction over it was improper, R & R filed a motion requesting consideration of its previous motion to dismiss which had been overruled. That motion was followed by La Mesa's motion to dismiss for lack of personal jurisdiction. On May 15, 1991, the lower court judge sustained the motions to dismiss the Sorrells' complaint and the third-party complaint of R & R, based upon his findings of lack of personal jurisdiction, and, apparently, because of forum non conveniens.
The Sorrells appealed the dismissal of their complaint against R & R, framing the issue on appeal as follows:
Whether the lower court had in personam jurisdiction and should adjudicate the cause of action under Forum Non Conveniens.

R & R appealed the dismissal of its third-party complaint against La Mesa. The issue presented by R & R was stated as a contingency issue to be considered only if this Court found that the Sorrells' complaint against R & R was incorrectly dismissed  that personal jurisdiction over R & R was proper. That issue is stated as follows:
Whether R & R's third-party complaint against La Mesa, based entirely upon principles of indemnification, was properly dismissed for lack of in personam jurisdiction if the underlying action against R & R (Sorrells' complaint) was improperly dismissed for lack of in personam jurisdiction.
The contingent nature of R & R's appeal makes consideration of the issue submitted by R & R necessary only if the Sorrells' complaint was improperly dismissed by the lower court.
The primary issues presented by the Sorrells for determination are: 1) whether personal jurisdiction over R & R could be obtained under the Mississippi Long-Arm Statute and the requirements of the Due Process Clause; and, 2) whether the exercise of jurisdiction over the case sub judice could be denied under the doctrine of forum non conveniens.
Because we find that the lower court could not properly exercise in personam jurisdiction over R & R, the Sorrells' complaint was correctly dismissed, and we determine it unnecessary to confront the dismissal of R & R's third-party complaint against La Mesa or the issue of forum non conveniens.

II.

WHETHER THE LOWER COURT HAD IN PERSONAM JURISDICTION AND SHOULD ADJUDICATE THE CAUSE OF ACTION.

A.
This Court employs de novo review of jurisdictional questions. In a prior case, we stated that, "[o]ur review of jurisdictional issues is essential de novo: `In making this determination, this Court is in the same position as the trial court, since all facts are set out in the pleadings or exhibits, and the chancellor may be reversed if he erred whether the error was manifest or not.'" McDaniel v. Ritter, 556 So.2d 303, 308 (Miss. 1989) (quoting Miss Cal 204, Ltd. v. Upchurch, 465 So.2d 326, 330 (Miss. 1985)).

*671 B.
The exercise of in personam jurisdiction over a nonresident business which is not qualified to do business in Mississippi may be accomplished pursuant to the Mississippi Long-Arm Statute. Miss. Code Ann. § 13-3-57 (1972), as amended. The long-arm statute requires the satisfaction of at least one of its self-contained conditions before it may be utilized. However, the Due Process Clause of the Fourteenth Amendment serves as a limitation on the power of a state's long-arm statute in the exercise of in personam jurisdiction over a non-resident defendant. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 413-14, 104 S.Ct. 1868, 1871-72, 80 L.Ed.2d 404 (1984). One court has succinctly phrased the dual considerations as follows:
There are two components of the state standard. First, the state's long-arm statute, as interpreted by the state courts, must apply. Second, its application in the particular case must comport with the due process requirements of the fourteenth amendment [sic]. Brown [v. Flowers Industries, Inc.], 688 F.2d [328] at 331-32 [(5th Cir.1982)]; Terry [v. Raymond International, Inc.], 658 F.2d [398] at 401 [(5th Cir.1981)]. Thus, the state standard, in referring to the power of state courts, incorporates elements of both state and federal law.
DeMelo v. Toche Marine, Inc., 711 F.2d 1260, 1264-65 (5th Cir.1983).
The threshold condition for application of the long-arm statute is the requirement that the nonresident corporation, over which personal jurisdiction is sought, is not a corporation qualified to do business in this state.
Once that condition is satisfied, the statute may be properly utilized in three situations: (1) where the nonresident made a contract with a resident of this state to be performed in whole or in part in this state; (2) where the nonresident committed a tort in whole or in part in this state against a resident or nonresident of this state; or (3) where the nonresident did business or performed any character of work or service in this state. Miss. Code Ann. § 13-3-57 (Supp. 1992). If the nonresident's conduct can be characterized as fitting any one of the aforementioned three categories, then such resident will be deemed subject to jurisdiction of the courts of Mississippi, provided that compliance with the protections of the Due Process Clause can be maintained.
As mentioned earlier, it is clear from the record that neither R & R nor La Mesa were authorized to do business in Mississippi. Therefore, the threshold requirement for the Sorrells' application of the long-arm statute to gain personal jurisdiction over R & R is met, and consideration of the contract, tort, and "doing business" prongs is the next step of the inquiry into whether the long-arm statute prerequisites were met.
Although a single contract between R & R and the Sorrells would be sufficient to impose personal jurisdiction upon R & R under the "contracts" prong of the long-arm statute, no contract other than the express or implied manufacturer's warranties existed between the Sorrells and R & R. But, since warranties are a form of contract, the existence of a warranty might satisfy this category, if the contract was to be performed in whole or in part in Mississippi.
Interpreting Mississippi law and the rationale of Breedlove v. Beech Aircraft Corp., 334 F. Supp. 1361 (N.D.Miss. 1971), as allowing personal jurisdiction when only a single contract exists, another court correctly stated that:
[T]his court specifically adopted the "single tort" provision as a proper basis for acquiring jurisdiction over a nonresident defendant. We ... recognized the present trend of the state Supreme Court to broaden the scope of in personam jurisdiction in tort cases, and are persuaded that the same result is required in the "single contract" case by a plain reading of the amended statute.

Kaydee Metal Products Corp. v. Sintex Mach. Tool Mfg. Corp., 342 F. Supp. 902, 906 (N.D.Miss. 1972).
However, there is no allegation by the Sorrells that the "single contract" (warranty) was to be performed in whole or in part within the State of Mississippi. The motor home was acquired and paid for by the Sorrells *672 wholly within the State of Nevada, and any warranty contractual relationships arose at the time and place of that purchase. Further, the record does not indicate that any warranty work was actually performed in Mississippi pursuant to the warranty terms, whether or not it was originally anticipated by the parties that such work would be performed in Mississippi. As a result, the warranty was insufficient to allow usage of the "contracts" category of the long-arm statute to establish personal jurisdiction over R & R.
According to the record, the motor home broke down in numerous states. But, at least some of the problems or defects which caused harm or damage to the Sorrells' motor home and personal property occurred in Hattiesburg, Mississippi.
Interpreting the long-arm statute as amenable to usage where a tort is committed only partially in Mississippi, another court stated that:
Plaintiff has alleged the commission of a tort by the defendant, in part in the State of Mississippi. The injury which befell the plaintiff ... transpired in this state. Under now well established law, Mississippi's long-arm statute contains no requirement that the part of the tort which causes the injury be committed in Mississippi. Since injury is necessary to complete a tort, a tort is considered to have been committed in part in Mississippi where the injury results in the state.
Rippy v. Crescent Feed Commodities, Inc., 710 F. Supp. 1074, 1077 (S.D.Miss. 1988) (emphasis theirs  citations omitted).
As a consequence of the occurrence of injury or damage to the Sorrells' motor home and other personal property within the State of Mississippi, the tort prong of the long-arm statute could have been properly utilized to assert personal jurisdiction over R & R, subject to the limitations imposed by the Due Process Clause.
R & R claimed that it had never done any business in Mississippi, and that it had absolutely no contacts with the State. That contention was uncontroverted. The only potential contact by R & R with Mississippi, which might be construed as "doing business" in Mississippi, consisted of R & R's acquiescence to the Sorrells' request that a cabinet door inside the motor home be replaced. R & R had worked on the motor home, in another state, and damaged the cabinet door. They subsequently promised to send a new cabinet door to the Sorrells' home in Mississippi.[4] However, the record did not contain a confirmation that the cabinet door was ever sent by R & R, or received by the Sorrells.
Therefore, it can be concluded that R & R was not "doing business" within the State of Mississippi, and this prong of the long-arm statute could not appropriately be used to establish personal jurisdiction over R & R.

III.
Assuming that the long-arm statute's requirements may be considered fulfilled under the "torts" prong for the purposes of jurisdictional analysis, the next inquiry focuses upon the rights protected by the Due Process Clause and conformance with those constitutional dictates. This Court has previously announced the necessity of protecting the due process rights of nonresidents, stating that:
[W]e find it firmly established that no state's court may make valid and enforceable adjudications of the important rights of non-residents if such would be inconsistent with the due process rights articulated in International Shoe and progeny... . Before any court of this state may subject Tulane to any form of judicial jurisdiction  in personam or quasi in rem  the International Shoe originated minimum contacts/purposeful/activities/foreseeability/basic fairness formulation of due process must be inquired into... .
*673 Administrators of The Tulane Educational Fund v. Cooley, 462 So.2d 696, 704 (Miss. 1984), cert. denied, 474 U.S. 820, 106 S.Ct. 70, 88 L.Ed.2d 57 (1985).
The Sorrells contend that application of the long-arm statute to assert personal jurisdiction over R & R does not violate the Due Process Clause protections afforded R & R. According to the Sorrells' argument, R & R manufactured motor homes and sold them to wholesalers, with knowledge that those wholesalers would sell the product to consumers for their use. Extending that argument, the Sorrells claim that R & R should have expected that usage of the motor homes would entail consumers driving such a highly mobile product into other states, including Mississippi. In other words, R & R should have reasonably foreseen that its product could eventually wind up in another state because it had placed the product into the stream of commerce.
According to the Supreme Court, the due process requirement of "minimum contacts" may be satisfied through conduct or contacts with the forum state which give rise to an exercise of either general jurisdiction or specific jurisdiction, as related by the following language:
[T]he constitutional touchstone remains whether the defendant purposefully established "minimum contacts" in the forum State. Although it has been argued that foreseeability of causing injury in another State should be sufficient to establish contacts there when policy consideration so require, the Court has consistently held that this kind of foreseeability is not a "sufficient benchmark" for exercising personal jurisdiction. Instead, "the foreseeability that is critical to due process analysis ... is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there."
... Thus where the defendant "deliberately" has engaged in significant activities within a State, or has created "continuing obligations" between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by the "benefits and protections" of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well.
Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474-76, 105 S.Ct. 2174, 2183-84, 85 L.Ed.2d 528 (1985) (citations and footnote omitted).
Therefore, an analysis of the elements of general jurisdiction and specific jurisdiction is proper.

A.
General jurisdiction over a foreign corporation may be properly exercised when the cause of action does not arise out of or relate to the foreign corporation's activities in the forum state, but sufficient contacts exist between the forum state and the foreign corporation. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). "When a claim involves an exercise of general jurisdiction, a defendant's contacts with the forum state must be so `systematic and continuous' as to reasonably support an exercise of jurisdiction." Martin & Martin v. Jones, 616 F. Supp. 339, 341 (S.D.Miss. 1985) (citing Thompson v. Chrysler Motors Corp., 755 F.2d 1162, 1171 (5th Cir.1985)).
The only contacts which R & R had with Mississippi were remote and isolated. Those contacts consisted of: 1) manufacturing the motor home which the Sorrells purchased and drove to Mississippi; and, 2) correspondence with the Sorrells regarding the warranty provisions and obligations covering the motor home. R & R did not do business in this state, did not have an agent for service of process in this state, nor did R & R create or maintain continuing obligations with residents of Mississippi. Therefore, R & R did not have the continuous and systematic contacts with the State of Mississippi which is the prerequisite to imposition of general jurisdiction over a nonresident defendant.

B.
An assertion of in personam jurisdiction may be appropriate where "the controversy *674 is related to or arises out of a defendant's contacts with the forum." Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). Thus, the controversy in the case sub judice must have been related to or arisen out of R & R's contacts with Mississippi before an exercise of specific jurisdiction could be deemed proper.
The action by R & R which could best constitute a contact with Mississippi from which the "controversy arose or was related to" consists of the manufacture of the motor home and subsequent placement of it into the stream of commerce with knowledge that it might possibly come into contact with Mississippi. If that action by R & R was "purposeful", it would be sufficient to support an exercise of jurisdiction over it, because "[e]ven a single purposeful contact is sufficient to satisfy the due process requirement of `minimum contacts' when the cause of action arises from the contact." Thompson, 755 F.2d at 1172 (citations omitted).
Explaining the Due Process Clause limitations upon a forum state's jurisdictional power in the exercise of specific jurisdiction, and the relevant inquiry concerning placement of a product into the "stream of commerce", the Supreme Court has stated:
Where a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there, this "fair warning" requirement is satisfied if the defendant has "purposefully directed" his activities at residents of the forum, Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790 (1984), and the litigation results from alleged injuries that "arise out of or relate to" those activities, Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984). Thus "[t]he forum State does not exceed its power under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State" and those products subsequently injure forum consumers. World-Wide Volkswagen Corp. v. Woodson, supra, 444 U.S. [286] at 297-98, 100 S.Ct. [559] at 567-568 [62 L.Ed.2d 490 (1980)].
Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472-73, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528 (1985).
Therefore, the dispositive inquiry becomes whether a defendant's mere awareness that its product might reach a forum state in the stream of commerce is sufficient to constitute "minimum contacts" and support an exercise of jurisdiction over it. The Supreme Court of the United States has answered that question in the negative. Asahi Metal Inc. v. Super Ct. of Cal., Solano Cty., 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987) (plurality opinion). There, the Supreme Court stated that:
The "substantial connection," Burger King, 471 U.S. at 475, 105 S.Ct., at 2184; McGee [v. International Life Ins. Co.], 355 U.S. [220], at 223, 78 S.Ct. [199], at 201 [2 L.Ed.2d 223 (1957)], between the defendant and the forum State necessary for a finding of minimum contacts must come about by an action of the defendant purposefully directed toward the forum State. Burger King, supra, 471 U.S. at 476, 105 S.Ct., at 2184; Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790 (1984). The placement of a product into the stream of commerce without more, is not an act of the defendant purposefully directed toward the forum State. Additional conduct of the defendant may indicate an intent or purpose to serve the market in the forum State... . But, a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State.

Asahi, 480 U.S. at 112, 107 S.Ct. at 1032 (emphasis added).
The placement of its product into the stream of commerce by R & R does not constitute an act purposefully directed toward Mississippi. Although we do not elucidate what activities would be construed as actions directed towards a forum state, the *675 record is completely devoid of any activity by R & R indicative of an intent or purpose by R & R to serve the Mississippi market. Consequently, R & R did not purposefully direct any action toward Mississippi, and an exercise of specific jurisdiction could not be supported.

IV.
Although application of the long-arm statute in the case sub judice may have been permitted under the tort prong of that statute, neither general jurisdiction or specific jurisdiction could have been exercised to obtain in personam jurisdiction over R & R. The limitations of the Due Process Clause prevented utilization of the Mississippi Long-Arm Statute to gain personal jurisdiction over a defendant foreign corporation that had not purposefully directed its activities towards Mississippi.
Accordingly, the lower court properly dismissed the Sorrells' complaint against R & R for lack of personal jurisdiction. As a consequence of dismissal of that complaint, the dismissal of R & R's third-party complaint against La Mesa for indemnification and the issue of forum non conveniens are moot.
AFFIRMED.
PRATHER, P.J., and SULLIVAN, PITTMAN, BANKS, JAMES L. ROBERTS, Jr., and SMITH, JJ., concur.
McRAE, J., dissents with separate written opinion joined by HAWKINS, C.J.
McRAE, Justice dissenting:
I disagree with the majority's affirmation that the lower court properly concluded that no in personam jurisdiction existed in this cause, thus preventing the nonresident defendants from being haled into a Mississippi court. To the contrary, the lower court should not have dismissed Don and Bettie Sorrells' (hereinafter "Sorrells") lawsuit in Lamar County, Mississippi against R & R Custom Coach Works, Inc. (hereinafter "R & R") and La Mesa RV Center, Inc. (hereinafter "La Mesa") since all necessary requirements to bring suit in Mississippi were in compliance with the Due Process Clause of the Fourteenth Amendment to the United States Constitution. The majority opinion clearly sets out the law concerning in personam jurisdiction in Mississippi; however, as "reasonable men" can differ, it should be concluded that in personam jurisdiction could have been maintained against defendant R & R, and therefore, I must dissent.
The Sorrells, residents of Mississippi and while in Mississippi, formed an oral contract for the purchase of a motor home during a long distance telephone conversation with La Mesa, a Nevada corporation. The vehicle was manufactured by R & R, a California Corporation. As the Sorrells returned from Nevada with their new motor home, they experienced an extraordinary amount of difficulties with the vehicle. While in Hattiesburg, Mississippi, severe water leaks occurred throughout the vehicle resulting in physical damage of which the Sorrells repaired themselves. R & R had previously repaired the motor home in another state and, as a result, damaged a cabinet door. The record reveals that R & R orally contracted to send a new cabinet door to Mississippi for replacement. As the majority points out, the record is silent as to whether the cabinet door was ever sent.
In any event, the Sorrells brought suit in Mississippi alleging that R & R was culpably negligent in the manufacture of the motor home and La Mesa and R & R breached express and implied warranties. The plaintiffs settled with La Mesa, and La Mesa was then dismissed from the suit, which left R & R as the only defendant in the case. R & R, subsequent to La Mesa's dismissal and pursuant to M.R.C.P. 14, motioned that the court allow it to bring La Mesa back into the suit as a third-party defendant. R & R's motion was granted. Ultimately, the Lamar County Circuit Court dismissed the Sorrells' complaint and R & R's third-party complaint finding that Mississippi lacked personal jurisdiction over R & R, even though another circuit court had previously ruled to the contrary. Both the Sorrells and R & R appealed the court's decision. The Sorrells appeal the court's dismissal of R & R, and R & R appeals the court's dismissal of its third-party claim, only contingent upon our finding *676 that Mississippi does, indeed, have personal jurisdiction over it.
As the majority notes, in order for a nonresident business not qualified to do business in Mississippi to be sued in this state, Miss. Code Ann. § 13-3-57 (Supp. 1993), Mississippi's Long-Arm Statute, must first apply[1]. If the necessary requirements of any prong of this statute are satisfied, then one examines the Due Process Clause of the Fourteenth Amendment to insure that the nonresident defendants rights have not been violated. The majority concedes that the tort prong of the long-arm statute "could have been properly utilized to assert personal jurisdiction over R & R, subject to the limitations imposed by the Due Process Clause." With this, I agree.
The record indicates that defective problems with the motor home occurred in Hattiesburg, Mississippi, and, therefore, defendant R & R could possibly have committed the tort of negligent manufacture in addition to breaches of express and implied warranties. See Cannon v. Tokyu Car Corp., 580 F. Supp. 1451, 1453 (S.D.Miss. 1984); Smith v. Temco, Inc., 252 So.2d 212, 216 (Miss. 1971) ("The tort is not complete until the injury occurs, and if the injury occurs in this State, then, ... the tort is committed, at least in part, in this State, and personam jurisdiction of the nonresident tort feasor is conferred upon the Mississippi court").
Since the long-arm statute requirements were admittedly met, the due process rights of the nonresident defendants must be explored. This Court has stated:
Due process requires that the non-resident defendant have "certain minimum contacts" with the forum state "such that maintenance of the suit does not offend traditional notions of fair play and substantial justice" and such that it is "reasonable ... to require the corporation to defend the particular suit which is brought there." International Shoe Co. v. Washington, 326 U.S. 310, 316, 317, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). The defendant's contacts with the forum state should be "such that he should reasonably anticipate being haled into court there." World Wide Volkswagen v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).
Wilkinson v. Mercantile National Bank, 529 So.2d 616, 619 (Miss. 1988). See McDaniel v. Ritter, 556 So.2d 303, 309 (Miss. 1989).
It is with the rest of the majority's opinion that I take issue. The majority holds that the due process criteria of "minimum contacts" were not satisfied because R & R's conduct or contact with Mississippi did not rise to the level in which to impose specific jurisdiction. Specific jurisdiction is appropriate to enact where "the controversy is related to or arises out of a defendant's contacts with forum." Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984). See Shaffer v. Heitner, 433 U.S. 186, 204, 97 S.Ct. 2569, 2579, 53 L.Ed.2d 683 (1977) (coining phrase "specific jurisdiction"). "Even a single purposeful contact is sufficient to satisfy the due process requirement of `minimum contacts' when the cause of action arises from the contact." Thompson v. Chrysler Motors Corp., 755 F.2d 1162, 1172 (5th Cir.1985).
The majority correctly notes that the relevant inquiry to explore when attempting to employ specific jurisdiction is to establish if the product was placed "into the stream of commerce." In the oft quoted case of World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), the United States Supreme Court stated that, "[t]he forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into *677 the stream of commerce with the expectation that they will be purchased by consumers in the forum State." World-Wide Volkswagen, 444 U.S. at 297-98, 100 S.Ct. at 567.
The Supreme Court in Asahi Metal Industry Co. v. Superior Court, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987), limited World-Wide Volkswagen and held that "purposeful availment" did not exist when a defendant merely placed a product into the stream of commerce without any other conduct. "The placement of a product into the stream of commerce without more, is not an act of the defendant purposefully directed toward the forum State. Additional conduct of the defendant may indicate an intent or purpose to serve the market in the forum State ..." Asahi, 480 U.S. at 112, 107 S.Ct. at 1032 (emphasis added).
Clearly, the manufacturer, R & R, purposefully availed itself to Mississippi by its conduct directed toward the forum State. R & R's contacts with Mississippi and the Sorrells are: (1) implied and express manufacturer's warranties on the motor home; (2) resulting physical damage to the motor home occurring in Mississippi; (3) economic damages arising from the essential repairs to the motor home; and (4) a promise to send a new cabinet door to Mississippi. In addition, the record reveals that a contract to purchase the motor home was consummated with La Mesa by telephone while the Sorrells were in Mississippi, and this must be derivatively imputed to R & R. This is a case where the manufacturer did more than place a product into the stream of commerce. Additional conduct of the defendant exists which should enable the Sorrells to bring suit in Mississippi, and the maintenance of this action against R & R in Mississippi would not offend traditional notions of fair play and substantial justice.
Further, because Mississippi has personal jurisdiction over R & R, its contingent appeal should be addressed, and a more detailed explanation of the statement of the case is needed. The Sorrells, actually living at Lake Serene in Lamar County, had a Hattiesburg, Mississippi address, and filed their complaint on August 12, 1987 in Forrest County, Mississippi. The next document filed with the court was a motion to dismiss for lack of personal jurisdiction by R & R dated October 19, 1987, and this motion was joined by La Mesa on November 5, 1987. The motion to dismiss was denied by Forrest County Circuit Judge Richard McKenzie on April 27, 1988.
Subsequent thereto, plaintiffs settled with La Mesa, and it was dismissed from the action. Aggrieved by La Mesa's dismissal, R & R, on January 10, 1989, filed a motion requesting permission to file a third-party complaint pursuant to M.R.C.P. 14 against La Mesa alleging that R & R had a right to be indemnified by La Mesa. This motion was granted on June 14, 1989. R & R's complaint, being somewhat specious, argued that the alleged active negligence of R & R should have been noticed and corrected by La Mesa although there was no contract or indemnification agreement between the two corporations. R & R, at this time, in effect accepted the court's March 24, 1988, dismissal of the motion to dismiss based of lack of personal jurisdiction. How can R & R now claim that Mississippi had no personal jurisdiction over it when it, after accepting the order denying dismissal, had used this court to file discovery motions and a third-party complaint?
Venue was later changed to Lamar County, Mississippi once, through discovery, R & R became aware that the Sorrells actually lived in Lamar County. La Mesa was given proper notice that it was now a third-part defendant. La Mesa was noticed on January 22, 1990, that the trial docket was to be set on February 12, 1990, and on February 12, 1990, La Mesa filed its answer to the third-party complaint. La Mesa's answer to the third-party complaint contained no defense of lack of personal jurisdiction. The trial was set to be heard on June 7, 1990, but was continued by order of the court dated March 2, 1990.
In the meantime, R & R filed numerous discovery motions which were never answered. On March 13, 1990, R & R filed a motion to compel discovery over La Mesa, and, for the first time against the R & R third-party complaint, La Mesa raised the issue of in personam jurisdiction in its answer *678 to the motion to compel. La Mesa failed to properly respond; it should have filed a motion to dismiss the third-party complaint. Instead, La Mesa allowed the court to set the case on the court docket, filed an answer to the third-party complaint without setting forth the defense of lack of personal jurisdiction and allowed R & R to file numerous discovery motions.
The fact that La Mesa had originally joined R & R in its motion to dismiss for lack of personal jurisdiction when both corporations were defendants is of no consequence. La Mesa was properly dismissed from the case because of a settlement agreement between it and the Sorrells. At that point, it was no longer a party to the suit. Once La Mesa was brought back into the suit as a third-party defendant, it was not until after La Mesa had answered R & R's complaint that La Mesa argued lack of personal jurisdiction. La Mesa simply waived its right to argue lack of personal jurisdiction, and the lower court was also in error in dismissing R & R's third-party complaint. See M.R.C.P. 12(h)(1). The lower court erroneously dismissed both the Sorrells' original complaint and R & R's third-party complaint, and, accordingly, I dissent.
HAWKINS, C.J., joins this dissent.
NOTES
[1] According to La Mesa, the Sorrells represented Texas as their residence whenever they purchased the motor home.
[2] It was later discovered that Suncrest was an assumed non-entity business name under which R & R conducted business.
[3] The Sorrell's complaint originally sought $9,720.00 in damages. However, the Sorrells made a motion to amend the ad damnum clause to $750,000.00 shortly before the trial date. That motion was denied, but the judge in the lower court allowed the Sorrells to amend the ad damnum to the amount of $70,000.00.
[4] The promise of R & R to repair the cabinet door is not separately analyzed under the "contract prong" because it might merely reflect a pre-existing legal obligation of R & R under its warranty with the Sorrells. If that were the case, then no separate agreement would have been formed by the parties since R & R would not have provided consideration with which to form the new contract. The record is silent on this point; therefore, a determination that a separate contract existed which required R & R to repair the cabinet door cannot be supported.
[1] Miss. Code Ann. § 13-3-57 (Supp. 1993) provides in pertinent part:

Any nonresident person, firm, general or limited partnership, or any foreign or other corporation not qualified under the Constitution and law of this state as to doing business herein, who shall make a contract with a resident of this state to be performed in whole or in part by any party in this state, or who shall commit a tort in whole or in part in this state against a resident or nonresident of this state, or who shall do any business or perform any character of work or service in this state, shall by such act or acts be deemed to be doing business in Mississippi and shall thereby be subjected to the jurisdiction of the courts of this State.