**MADAMI INTERNATIONAL, LLC and Transnational Outdoor Power, LLC, Plaintiffs,**

v.

**DINLI METAL INDUSTRIAL CO., LTD., Dinli USA, Inc., and Sally Wang, Defendants.**

No. CIV. 3:02–CV–110LN.

United States District Court, S.D. Mississippi, Jackson Division.

Dec. 19, 2002.

David B. Grishman, Watkins, Ludlam, Winter & Stennis, P.A., Jackson, MS, Lawrence Wesley Broadhead, Mendenhall, Henry F. Laird, Jr., Watkins, Ludlam, Winter & Stennis, P.A., Gulfport, MS, for Plaintiffs.

Paul N.Davis, J. Stevenson Ray, Butler, Snow, O'Mara, Stevens & Cannada, Jackson, MS, for Defendants.

### MEMORANDUM OPINION AND ORDER

TOM S. LEE, Chief Judge.

This cause is before the court on the motion of defendant Dinli Metal Industrial Co., Ltd. (Dinli) to dismiss for lack of personal jurisdiction, insufficiency of process and insufficiency of service of process pursuant to Rules 12(b)(2), (4) and (5) of the Federal Rules of Civil Procedure, respectively. Plaintiffs Madami International and Transnational Outdoor Power have responded in opposition to the motion. The court, considering the memoranda and submissions of the parties, as well as other pertinent authorities, finds the motion to dismiss for insufficiency of service of process well taken and should be granted.

Dinli is a Taiwanese corporation that is in the business of manufacturing four-wheel all terrain vehicles (ATVs). Madami is a Mississippi company with its principal place of business in Arkansas, and Transnational is an Arkansas company with its principal place of business in Arkansas. According to plaintiffs' complaint, in July 2001, the parties entered into an exclusive dealership agreement pursuant to which plaintiffs became the sole and exclusive United States distributors for three models of ATVs manufactured by Dinli. Plaintiffs allege that in reliance on this agreement, they built up an extensive network of dealerships across the United States and Canada to sell and distribute the Dinli ATVs. They charge, though, that Dinli breached the agreement and tortiously interfered with plaintiffs' contractual and business relations with their sales representatives when it communicated to those representatives that plaintiffs were not and/or no longer would be distributors for ATVs manufactured by Dinli.

Dinli has moved to dismiss for lack of personal jurisdiction, and for insufficiency of process and insufficiency of service of process. In the court's opinion, while Dinli is amenable to suit in Mississippi so that its objection on personal jurisdiction grounds is not well founded, this case is properly dismissed for Dinli has not been effectively served with process.

■ In a diversity action such as this, personal jurisdiction may be exercised over a nonresident defendant if the nonresident defendant is amenable to service of process under the law of the forum state and the exercise of jurisdiction under state law comports with the Due Process Clause of the Fourteenth Amendment. *Stuart v. Spademan*, 772 F.2d 1185, 1189 (5th Cir. 1985). The first part of the dual inquiry is solely a matter of determining the reach of the forum state's long-arm statute. *Id.* The second step—the due process inquiry—is controlled by federal law and mandates the satisfaction of two elements: (a) the nonresident must have some minimum contact with the forum which results from an affirmative act on his part; and, (b) it must be fair and reasonable to require the nonresident to defend the suit in the forum state. *Id.*

Mississippi's long-arm statute provides:

Any nonresident person, firm, general or limited partnership, or any foreign or other corporation not qualified under the Constitution and laws of this state as to doing business herein, who shall make a contract with a resident of this state to be performed in whole or in part by any party in this state, or who shall commit a tort in whole or in part in this state against a resident or nonresident of this state, or who shall do any business or perform any character of work or service in this state, shall by such act or acts be deemed to be doing business in Mississippi and shall thereby be subjected to the jurisdiction of the courts of this state.

Miss.Code Ann. § 13–3–57. In the court's opinion, plaintiffs have made a prima facie showing that Dinli is subject to jurisdiction under both the tort and contract prongs of the long-arm statute.[1]

■ In their complaint, plaintiffs have alleged that an exclusive dealership agreement existed between Madami and Dinli, and in response to Dinli's motion, have presented uncontroverted evidence, via the affidavit of Madami's chief executive officer David McMahen, that Dinli sent invoices for payment of ATVs and parts to plaintiffs' address in Jackson, Mississippi and that plaintiffs made payment back to Dinli from their Jackson, Mississippi address. This obviously qualifies as performance of the contract in part in Mississippi.

The tort prong of the long-arm statute is invoked, as well, by plaintiffs' allegations and McMahen's affidavit which states that Dinli tortiously interfered with plaintiffs' contracts and business relations in Mississippi when it communicated to Mississippi dealers that plaintiffs were not its distributors and when Dinli sold inventory and parts directly to the Mississippi dealers established by plaintiffs. Thus, an exercise of jurisdiction over Dinli is proper under Mississippi's long-arm statute. In the court's opinion, the exercise of person-

---

1. On a motion to dismiss for lack of personal jurisdiction, the plaintiff need only present a prima facie case of personal jurisdiction. *Hunter v. Barbour*, No. 1:98CV368, 1999 WL 33537181 at *1 (N.D.Miss.1999) (citing *First Mississippi Corp.*, 876 F.Supp. at 841; (other citations omitted)). In evaluating whether plaintiffs have met their burden, the court must accept as true the uncontroverted allegations in the complaint and resolve in favor of the plaintiffs any factual conflicts posed by the parties' affidavits. *First Mississippi Corp.*, 876 F.Supp. at 842.

al jurisdiction over Dinli is also proper under the Due Process Clause. *See Submersible Systems, Inc. v. Perforadora Central, S.A. de C.V.*, 249 F.3d 413, 418 (5th Cir.2001).

An exercise of personal jurisdiction is consistent with due process if (1) the defendant has purposefully availed itself of the benefits and protections of the forum state by establishing minimum contacts with the forum state, and (2) the exercise of personal jurisdiction does not offend traditional notions of fair play and substantial justice. *Jones v. Tread Rubber Corp.*, 199 F.Supp.2d 539, 546 (S.D.Miss. 2002). The Fifth Circuit has further subdivided the "minimum contacts" prong of the due process inquiry into contacts giving rise to "specific" personal jurisdiction and those giving rise to "general" personal jurisdiction. *Allred v. Moore & Peterson*, 117 F.3d 278, 286 (5th Cir.1997). "Specific jurisdiction is appropriate when the nonresident defendant's contacts with the forum state arise from, or are directly related to, the cause of action," *id.*, whereas general jurisdiction is based on a defendant's contacts with the forum which are unrelated to the controversy, *Southmark Corp. v. Life Investors, Inc.*, 851 F.2d 763, 772 (5th Cir.1988),

Plaintiffs have not contended that general jurisdiction exists, but rather maintain that this court has specific jurisdiction over Dinli. The court must thus examine the relationship between Dinli, this litigation and the forum state, bearing in mind that when specific jurisdiction is alleged, even a single purposeful contact is sufficient to satisfy the due process requirement of "minimum contacts" when the cause of action arises from the contact. *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1172 (5th Cir.1985).

The allegations of plaintiffs' complaint and plaintiffs' evidence are sufficient to satisfy plaintiffs' burden to show that Dinli purposefully directed its activities at Mississippi.[2] Specifically, plaintiffs have presented evidence that Dinli's president, Mr. Lu, Tai–Yang, flew to Jackson, Mississippi to conduct negotiations in an effort to establish the exclusive dealership agreement at issue; that Dinli sent invoices to Mississippi requesting payment for goods delivered to plaintiffs; and that agents of Dinli interfered with the contracts and business relations existing between plaintiffs and their sales associates in Mississippi.[3]

Moreover, all of these purposeful actions are directly related to the litigation in this case.[4] Based on these alleged contacts,

---

**2.** The court reiterates that at this stage of the litigation, plaintiffs need only make a prima facie showing of personal jurisdiction. In *Thompson*, the court observed that "[e]ventually, of course, the plaintiff must establish jurisdiction by a preponderance of the evidence, either at a pretrial evidentiary hearing or at trial. But until such a hearing is held, a prima facie showing suffices, notwithstanding any controverting presentation by the moving party, to defeat the motion." *Thompson*, 755 F.2d at 1172 n. 11 (citing *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir.1981)).

**3.** In its rebuttal, Dinli argues that McMahen's affidavit attesting to the fact of negotiations in Mississippi leading to the dealership agreement should be stricken because it directly

conflicts with his earlier deposition testimony. The court, however, finds that there is no conflict in McMahen's testimony. As in his affidavit, McMahen testified by deposition that Dinli sought out Madami as a business prospect and flew Tai–Yang to meet with McMahen's business partner in Jackson for the purpose of pursuing talks related to the agreement. Dinli has presented no evidence to the contrary. In any event, even if the relevant portions were stricken, the resulting conclusion that minimum contacts are present would not change.

**4.** Plaintiffs' breach of contract claim and the damages they allegedly sustained as the result of any alleged breach are related to the contact Tai–Yang allegedly had with the State of

the court concludes that Dinli could have reasonably anticipated being haled into court in Mississippi. *See World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) (finding the critical inquiry in the minimum contacts due process analysis is whether defendant's conduct and connection with the forum state are such that he should have reasonably anticipated being haled into court there). The court further concludes that Dinli may fairly and reasonably be required to defend itself in a Mississippi court. Dinli products are sold in Mississippi, negotiations relating to the alleged dealership agreement are alleged to have been conducted by Dinli in Mississippi on a contract that was partly performed in Mississippi and the alleged torts were committed in part in Mississippi. For these reasons, a Mississippi court has an interest in providing a forum for this suit. And there is no basis for concluding that Mississippi is an unreasonably or unfairly inconvenient forum for Dinli, particularly in light of the apparent magnitude of Dinli's operations in the United States and its specific contacts with Mississippi. *See Austin v. North American Forest Prod.,* 656 F.2d 1076 (5th Cir.1981) (factors to be considered in fairness analysis include "whether the forum state has any special interest in exercising jurisdiction," and "whether the convenience of the parties favors litigating in another state"). For these reasons, the "maintenance of [this] suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278 (1940)).

■ Having said all this, however, the court is of the opinion that although Dinli is amenable to suit in Mississippi, the court may not properly exercise jurisdiction over Dinli unless plaintiffs have properly served Dinli with process, or unless Dinli has waived any objections to the insufficiency of process or service of process, neither of which has occurred in this case.

Plaintiffs allege that Dinli formally appointed plaintiff Madami as its registered agent for service of process by a document entitled "Appointment of Agent for Service of Process," which purports to have been signed by a Dinli representative and recites that the appointment was made pursuant to the requirements of the National Traffic and Motor Vehicle Safety Act (NTMVSA), 15 U.S.C. § 1399. On the basis of that document, plaintiffs maintain that Madami's actions in having summons issued and personally served on Madami at its office in Arkansas constitutes proper and effective service on Dinli. Dinli, though, flatly denies that it ever appointed Madami as its registered agent for service of process[5] and insists further that irrespective of the validity of the appointment document, Madami's service of process on itself as Dinli's putative agent is patently insufficient. Indeed, even if the court were to assume that Dinli had validly appointed Madami to be its registered agent for service of process for actions brought against Dinli in Mississippi, a conclusion that Madami could serve in that capacity

---

Mississippi, i.e., negotiating the dealer agreement, in part, in Jackson, Mississippi and Dinli's alleged performance of remitting invoices to Madami's Jackson, Mississippi office for payment of goods sold under the dealer agreement alleged to exist at that time. Furthermore, Madami's tort action is directly related to the alleged contacts Dinli had with

the State of Mississippi, i.e., because Madami has alleged Dinli personally interfered with its business relationships in Mississippi and sold goods directly to Mississippi dealers in violation of the agreement.

5. It contends that no one from Dinli ever signed the subject appointment document.

in litigation brought against Dinli *by Madami* would seem to the court to defy any notion of due process.[6] In any event, the court concludes from the evidence before the court that Dinli did not appointment Madami as its authorized agent for service of process for actions brought against it, other than actions brought by the United States Secretary of Transportation under the NTMVSA.[7]

That NTMVSA was enacted by Congress for "the express purpose [of allowing] the government to establish and enforce motor vehicle safety standards." *Richardson v. Volkswagenwerk,* 552 F.Supp. 73, 77–78 (W.D.Mo.1982) (citing 15 U.S.C. §§ 1381, 1392). The Act included a provision requiring all manufacturers of motor vehicles for importation into the United States to designate in writing an agent for service of process and to file such designation with the Secretary of Transportation. It further provided that service could be "made upon said manufacturer by service upon such designated agent for service. . . ." 15 U.S.C. § 1399(e). In *Richardson,* the court opined that "the Act's legislative history and federal regulations promulgated thereunder coalesce with the plain meaning of the Act itself to demonstrate that the power of the agent appointed under the Act is limited by the scope of the Act itself," 552 F.Supp. 73, 77–78 (citing 49 C.F.R. § 551.45(c); 15 U.S.C. § 1399(e)), and held specifically that a manufacturer's designation of an agent under 15 U.S.C. § 1399(e) is "limited to service of documents by, of and from the United States Secretary of Transportation," *id.,* and "is not a proper method for service of process in common law actions," *id.* (citing numerous cases reaching this conclusion). This court concurs in the reasoning of the court in *Richardson,* and concludes that an appointment of an agent under the repealed § 1399(e) or under what appears to be the current version of the statute, 49 U.S.C. § 30164, does not serve as a general agency appointment for common law actions.

As plaintiffs have not shown that service was accomplished by any means other than Madami's service on itself, it necessarily follows that there has been no effective service of process on Dinli. Accordingly, it is ordered that Dinli's motion to dismiss is granted and this action will be dismissed without prejudice.

A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.

---

**6.** Of course the court recognizes that Rule 4(c)(2) of the Federal Rules of Civil Procedure provides for service by way of delivery of the summons and complaint "to an officer, a managing agent or general agent or to any other agent authorized . . . by law to receive service of process." Fed.R.Civ.P. 4(h)(1). Rule 4(h)(1) further provides that service of process may be effected upon a foreign or domestic corporation "in the same manner prescribed for individuals by subdivision (e)(1) . . . ." Under Rule 4(e)(1), unless otherwise provided in federal law, an individual may be served in the manner prescribed by "the law of the state in which the district court is located, or in which service is effected . . . ." .

**7.** For the sake of argument, the court will assume that Dinli's representative executed the document at issue.